UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────

№ 21-CV-4453 (DG) (RER)

───────────────────

QUINN CHRISTOPHER,
*individually and as executrix of the Estate of Theodore Christopher,*

Plaintiffs,

VERSUS

GLOBAL AEROSPACE, INC.,

Defendant.

───────────────────

**REPORT & RECOMMENDATION**

August 5, 2022

───────────────────

**TO THE HONORABLE DIANE GUJARATI
UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

In March 2021, Plaintiff Quinn Christopher, individually and as administrator of the estate of her late husband, Theodore Christopher (the "Christopher Estate," and collectively "Plaintiffs"), obtained a $3,000,000 judgment (the "Judgment") against the estate of Captain Charles P. Dundas (the "Dundas Estate") in a wrongful death suit stemming from a fatal airplane crash that killed both the pilot, Captain Dundas, and his sole passenger, Mr. Christopher. (ECF No. 1 ("Compl.") ¶¶ 17, 25, 28; ECF No. 1-8 ("Compl. Ex. F - Judgment"); *see also* ECF No. 25, *Christopher v. Dundas*, 20-CV-4265 (RRM) (ST) (E.D.N.Y. Mar. 31, 2021)).

1

In August 2021, Plaintiffs commenced this direct action under N.Y. Ins. Law § 3420(a)(2) to enforce the Judgment against Global Aerospace, Inc. ("Defendant" or "Global"), the underwriter that insured Dundas' airplane. (Compl. ¶¶ 1–3, 20–22)).[1] Plaintiffs further seek a declaratory judgment as to the parties' rights and responsibilities under the insurance policy, compensatory damages for breach of contract, and consequential and extracontractual damages including attorneys' fees and punitive damages for Global's alleged violation of the implied covenant of good faith and fair dealing. (ECF No. 1 ("Compl.") ¶ 1). Pending before the Court is Global's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), (ECF No. 15 ("Def's Mot. to Dismiss")), which Your Honor has referred to me for a report and recommendation. (Order dated 04/26/2022).

After carefully reviewing the record, and for the reasons set forth herein, I respectfully recommend that the motion be granted in part and denied in part.

## **BACKGROUND**

The following facts are derived from the complaint, the exhibits thereto, and the National Transportation Safety Board ("NTSB") Aviation Accident Final Report issued following the agency's investigation of the accident.[2]

---

[1] Subject matter jurisdiction is predicated on 28 U.S.C. § 1332. (Compl. ¶ 11).

[2] "Generally, under [Rule] 12(d), where matters outside the pleadings are presented in connection with a Rule 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under [Rule] 56[.]" *Intelligent Digital Sys., LLC v. Beazley Ins. Co.*, 906 F. Supp. 2d 80, 89 (E.D.N.Y. 2012) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks and citations omitted)); *see also Morelli v. Cedel*, 141 F.3d 39, 45 (2d Cir. 1998) ("Consideration of matters outside the pleadings converts the defendant's motion to dismiss into a summary judgment motion."). However, "the Second Circuit has recognized that district courts may consider the following materials outside the complaint in deciding a Rule 12(b)(6) motion" without requiring such conversion: "(1) 'documents attached to the complaint as an exhibit or incorporated in it by reference'; (2) 'matters of which judicial notice may be taken'; and (3) 'documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.'" *Frederick v. Jetblue Airways Corp.*, No. 14-CV-7238 (DLI) (RER), 2016 WL 1306535, at *3 (E.D.N.Y. Mar. 31, 2016) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)), *aff'd*, 671 F. App'x 831 (2d Cir. 2016); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (noting courts may consider a

I.   The Accident

On September 16, 2017, Captain Dundas flew his 1964 Mooney M20C single-engine monoplane (the "Aircraft") from his private hangar at Francis S. Gabreski Airport in Westhampton Beach, New York to Robertson Field Airport in Plainville, Connecticut. (Compl. ¶¶ 6–8, 12, 18; *see also* NTSB Report at 3, 5). There, Dundas requested that the line service attendant top-off the Aircraft's two fuel tanks, checked the fuel, and subsequently departed on a return flight to Westhampton Beach after picking up a single passenger. (NTSB Report at 3). The passenger—Theodore Christopher—was Dundas' friend, Plaintiff's decedent, and a well-known NASCAR driver who was scheduled to race at Riverhead Raceway in Calverton, New York the same afternoon. (Compl. ¶ 14; NTSB Report at 3).

On the day of the flight, Dundas "held a valid Airline Transport Pilot Certificate, Certified Flight Instructor Certificate, Flight Engineer Certificate, and Mechanic Certificate issued by the Federal Aviation Administration." (Compl. ¶ 13; *see also* NTSB Report at 4 (listing certificates and ratings held by Dundas according to Federal Aviation Administration airman records)). According to the Complaint, Dundas was operating in his capacity as a Certified Flight Instructor

---

document not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint,'" but "if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment'") (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); citing Fed. R. Civ. P. 12(d)).

Along with the exhibits attached to the Complaint, Defendant requests that the Court consider two documents that are incorporated by reference within those exhibits: the NTSB Report issued following the agency's investigation of the accident (ECF No. 15-2 ("NTSB Report")), which is referenced in multiple exhibits and which Defendant argues provided "the sole means by which plaintiff could have known about" certain circumstances of the accident relayed in the Complaint, including the ultimate cause of the accident ("ECF No. 15-4 ("Def's Mem.") at 3 n.2), and Mr. Dundas' insurance application (ECF No. 15–2), which is referenced in one exhibit to the Complaint and was considered in Global's decision to deny coverage for the accident. (Def's Mem. at 5 n.4)). Because the NTSB Report is incorporated by reference in several of the exhibits to the Complaint, and because Plaintiffs necessarily relied upon the NTSB's findings in drafting the Complaint, I find that the NTSB Report was integral to the Complaint and may be considered in deciding this motion. However, while Dundas' insurance application is mentioned in one exhibit, the application does not appear to have been relied upon in drafting the Complaint, and therefore cannot be considered "integral." Accordingly, the Court will not consider the insurance application in this report and recommendation.

3

and had been teaching Christopher how to fly the Aircraft in an emergency when an actual emergency occurred. (Compl. ¶¶ 15–16). Enroute to Westhampton Beach, "the Aircraft experienced a total loss of power to its one and only engine due to foreign objects and debris in the fuel system." (Compl. ¶ 16; NTSB Report at 1–2). The loss of power caused the Aircraft to steeply descend, culminating in a nose-dive and crash into a series of tall pine trees in North Branford, Connecticut—approximately 24 miles from the airport from Robertson Field Airport—which killed both Christopher and Dundas. (Compl. ¶ 17; *see also* NTSB Report at 1–2, 6).

The Complaint alleges that on or before the day of the crash, maintenance and repairs performed on the Aircraft at Dundas' private hangar in New York resulted in foreign objects and debris entering the fuel system, which in turn caused the crash, Christopher's injuries, and ultimately Christopher's death. (Compl. ¶¶ 18–19). After investigating the accident, the NTSB "determine[d] the probable cause{s} of the accident to be: [a] total loss of engine power due to fuel starvation as the result of foreign object debris in the fuel selector valve." (NTSB Report at 2; *see also id.* at 1 ("[D]isassembly of the fuel selector revealed a piece of red, fibrous material consistent with a shop towel that likely inhibited fuel flow to the engine and resulted in fuel starvation and a total loss of engine power."). The NTSB also found that "[c]ontributing to the accident was the pilot's selection of a low cruising altitude, which reduced the available time to troubleshoot the loss of engine power and afforded fewer forced landing site options, and improper maintenance of the airplane, which allowed a portion of a shop towel into the fuel system." (NTSB Report at 2; *see also id* at 2 (listing "fuel selector/shutoff valve – damaged/degraded" and "fuel – fluid management" as the "cause[s]" of the accident and "fuel selector/shutoff valve – incorrect use/operation," "altitude – not specified," "maintenance – other/unknown," "post maintenance

4

inspection – other/unknown," and "decision making / judgment – pilot" as "factor[s]" contributing to the accident).

As of the date of the accident, Dundas, age 81, held an expired medical certificate. (*See* NTSB Report at 4, 11 (noting that Dundas held "a second-class medical certificate limited by a requirement to wear corrective lenses and specifying, 'Limited second class/Full third class privileges; Not valid for carrying passengers or cargo for compensation except if serving as pilot or fully qualified 2-pilot crew; Not valid for any class after 10/31/2007.'")). Dundas had last applied for an FAA second-class medical certificate on October 16, 2006, and at the time of the application had "reported 31,300 total hours of flight experience." (NTSB Report at 4). However, due to his medical history, including a triple-bypass surgery and the installation of an internal defibrillator, Dundas' medical certificate was denied in December 2007. (NTSB Report at 11). Although Dundas' "medical certificate was denied nearly [ten] years before the accident and never re-issued," the NTSB determined that his severe cardiac disease and the corresponding risk that related symptoms could suddenly occur likely did not contribute to the accident. (NTSB Report at 2).

II.    The Aviation Insurance Policy

Dundas was the named insured in an aviation insurance policy issued by Global (the "Policy"), which covered the Aircraft on the date of the accident. (Compl. ¶¶ 2–5, 20–22; *see also* ECF No. 1-3 ("Policy") at 2). Under the Policy, Global "agreed to provide coverage for and 'to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by any [person and/or passenger] caused by an occurrence and arising out of the ownership, maintenance, or use of the aircraft.'" (Compl. ¶ 20 (quoting Policy at 4)). In turn, the Policy defines "Occurrence" as "an accident including continuous or repeated

5

exposure to conditions, which results in bodily injury . . . neither expected nor intended from the standpoint of the Insured.'" (Compl. ¶ 22 (citing Policy at 9)). The Policy provides coverage for bodily injury liability up to $1,000,000 for each occurrence. (Compl. ¶ 20 (citing Policy at 2)). Importantly here, Item 7 of the Policy provides for certain coverage exclusions based on the identity and characteristics of the "pilot in command"[3] of the Aircraft at the time of the occurrence. Specifically, Item 7 provides:

> PILOTS. The Policy shall not apply while the aircraft is in flight[4] unless the pilot in command is any of the following: For 1964 Mooney M20C, N53CP.
>
> PART A: Harry Bobb . . . .
>
> PART B: (1) Any Certified Flight Instructor who has a minimum of 5 hours in this make and model aircraft, provided in flight operation is necessary in connection with training requirements set forth in PART A above; or (2) Any pilot designated by a Federal Aviation Administration certificated Repair Station or other aircraft repair or maintenance facility which is exercising care, custody or control of the aircraft, provided in flight operation is necessary in connection with work being performed on the aircraft by the station or facility.
>
> PART C: Any person holding a currently effective certificate issued by the Federal Aviation Administration designating him or her a private, commercial or airline transport pilot, airplane category, with single engine land and instrument ratings, who has a minimum of 500 total logged flying hours, including at least 50 hours in aircraft having retractable landing gear, of which not less than 25 hours shall have been in this make and model aircraft.

(Policy at 3). As noted above, Federal Aviation Administration records reflect that Dundas held an airline transport pilot certificate on the day of the accident (Compl. ¶ 13) with a rating for, *inter alia*, "airplane single-engine land and sea" (NTSB Report at 4), and had logged over 31,300 total hours of flight experience (*id.*), but did not have a current medical certificate (*id.* at 2).

---

[3] The Policy defines "Pilot in Command" as "the pilot responsible for the operation and safety of the aircraft during flight." (Policy at 9).

[4] The Policy defines "Flight" as "the time commencing with the actual take-off run of the aircraft and continuing thereafter until it has completed its landing roll[.]" (Policy at 8).

6

III.    Insurance Claims and Procedural History

After the accident, the Dundas Estate notified Global of the occurrence, the losses incurred, and an anticipated lawsuit on October 27, 2017. (Compl. ¶ 23). Global communicated with the Dundas Estate by letter on November 22, 2017, and after an investigation subsequently denied coverage for claims arising from the accident by letter on February 8, 2018—105 days after learning of the claim. (Compl. ¶ 24; *see also* ECF No. 1-4 ("Compl. Ex. B – First Denial" or "First Denial") at 1). According to Global, coverage was denied based on the exclusion in Item 7 Part C of the Policy ("Part C"). (First Denial at 2). Specifically, Global's investigation concluded that Dundas "did not possess a currently effective certificate issued by the Federal Aviation Administration designating him a private, commercial or airline transport pilot, airplane category, with single engine land and instrument ratings, in that his medical certification had expired prior to the date of the accident." (*Id.*). Global indicated that it "would welcome any information that demonstrates that Charles Dundas met the conditions of Item 7," including evidence demonstrating that Dundas "had renewed his medical certification either by an FAA physical examination, or through the FAA BasicMed certification." (*Id.*).

On September 11, 2020, Plaintiffs sued the Dundas Estate in this District "seeking damages for bodily injuries caused by and arising out of" Dundas' negligent maintenance and repair of the Aircraft, and his failure to warn Christopher of the Aircraft's mechanical defects. (Compl. ¶ 25; *see also* ECF No. 1-5 ("Compl. Ex. C – Wrongful Death Complaint") ¶¶ 12–19); ECF No. 1, *Christopher v. Dundas*, 20-CV-4265 (RRM) (ST) (E.D.N.Y. Sept. 11, 2020)). The Dundas Estate notified Global of the then-pending wrongful death suit on October 5, 2020, and requested that Global provide coverage and defense for the suit. (Compl. ¶ 26; ECF No. 1-6 ("Compl. Ex. D - "Notice Letter to Defendants") at 2). A month later, Global again denied coverage via letter to the Dundas Estate, explaining in detail its position that it had "no duty to provide the Dundas Estate

7

with a defense of the *Christopher* Lawsuit and no duty to provide indemnity in the event a judgment is entered in favor of the plaintiffs therein." (ECF No. 1-7 ("Compl. Ex. E – Second Denial" or "Second Denial") at 1; *see also* Compl. ¶ 27).

The co-administrators of the Dundas Estate subsequently executed confessions of judgment, and the Clerk of Court entered the $3,000,000 Judgment—comprised of $1,500,000 for wrongful death and $1,500,000 for pre-impact terror and conscious pain and suffering plus statutory interest—in Plaintiffs' favor. (Compl. ¶ 28; Compl. Ex. F - Judgment). Plaintiffs then served Global and the Dundas Estate with a Notice of the Entry of Judgment in May 2021, and formally demanded that Global satisfy the judgment. (Compl. ¶¶ 29–30; *see also* ECF Nos. 1-10, 1-11, 1-12, 1-13).

Less than a week later, on May 24, 2021, Global denied the direct demand, explaining in a letter to Plaintiffs that "there exists no basis on which Global is obligated to satisfy any portion of the judgment entered against the Dundas Estate." (Compl. ¶ 31; *see also* ECF No. 1-13 ("Compl. Ex. K – Third Denial" or "Third Denial") at 1). In the letter, Global explained that it "assume[d] that [Plaintiffs were] aware that Global previously disclaimed coverage," and further explained that though it was "unable to disclose specific information regarding the basis on which coverage was disclaimed without proper authorization," it would provide copies of its coverage correspondence with the Dundas Estate "upon receipt of a duly executed assignment of" rights under the Policy. (Third Denial at 1–2). As a result of Global's denial of coverage, the Judgment "remains wholly unpaid and unsatisfied[.]" (Compl. ¶ 32).

IV.   Procedural History

Plaintiffs commenced this action to collect the Judgment directly from Global under N.Y. Ins. Law § 3420(a)(2) on August 6, 2021 (Compl. ¶ 33), and properly served Global on August 17,

8

2021 (ECF No. 7). On September 3, 2021, Defendant requested that the Court hold a pre-motion conference on its anticipated motion to dismiss the suit under Rule 12(b)(6). (ECF No. 9). After Plaintiffs responded (ECF No. 10), Your Honor granted Defendant's request and held a pre-motion conference on September 29, 2021 (ECF No. 11). On November 3, 2021, Global filed its fully-briefed motion to dismiss. (Def's Mot. to Dismiss; Plaintiff's response in opposition (ECF No. 16 ("Pl's Opp.")), and Defendant's Reply (ECF No. 17 ("Def's Reply"))). Your Honor subsequently referred the motion to me for a report and recommendation. (Order dated 4/26/2022).

## LEGAL STANDARDS

I.   Rule 12(b)(6)

"In lieu of an answer, a defendant may move for dismissal of a complaint for 'failure to state a claim upon which relief can be granted.'" *Frederick v. Jetblue Airways Corp.*, No. 14-CV-7238 (DLI) (RER), 2016 WL 1306535, at *3 (E.D.N.Y. Mar. 31, 2016) (quoting Fed. R. Civ. P. 12(b)(6)), *aff'd*, 671 F. App'x 831 (2d Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In considering a motion to dismiss, a court "must accept as true all well-pleaded facts alleged in the [complaint] and must draw all reasonable inferences in the non-moving party's favor." *Magnacoustics, Inc. v. Integrated Computer Sols., Inc.,* No. 17-CV-4967 (RER), 2020 WL 4041310, at *3 (E.D.N.Y. July 17, 2020) (original alterations omitted) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 505 (S.D.N.Y. 2013)). As further explained above, "it is well-settled that, in considering a motion to dismiss, courts may take judicial notice of documents

9

attached to, integral to, or referred to in the complaint." *Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.*, No. 13-CV-3266 (JFB) (WDW), 2014 WL 672926, at *7 n.7 (E.D.N.Y. Feb. 20, 2014) (citing *Glob. Network Commc'ns. Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

II.  New York Insurance Law

   A. Section 3420(a)(2)

"New York's insurance law 'allows an injured party with an unsatisfied judgment against an insured party to sue the insurer for satisfaction of the judgment in some circumstances.'" *Daytree at Cortland Square, Inc. v. Walsh*, No. 21-1991, 2022 WL 2345820, at *2 (2d Cir. June 29, 2022) (quoting *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 174 (2d Cir. 2010); citing N.Y. Ins. Law § 3420(a)(2)); *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 354–55 (2004)). Specifically, § 3420(a)(2) provides a cause of action to an injured party "in derogation of the common law, 'but only under limited circumstances—the injured party must first obtain a judgment against the tortfeasor, serve the insurance company with a copy of the judgment and await payment for 30 days.'" *Commonwealth Land Title Ins. Co.*, No. 13–CV–3266 (JFB) (WDW), 2014 WL 672926, at *5 (E.D.N.Y. Feb. 20, 2014) (quoting *Lang*, 3 N.Y.3d at 354).

   B. Section 3420(d)(2)

   New York Insurance Law § 3420(d)(2) provides:

   If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. Law § 3420(d)(2). Put simply, this section "requires a timely disclaimer of coverage in 'insurance cases involving death and bodily injury claims arising out of a New York accident and

brought under a New York liability policy.'" *Golden Ins. Co. v. Ingrid House LLC*, No. 21-1337, 2022 WL 2165252, at *2 (2d Cir. June 14, 2022) (quoting *KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 23 N.Y.3d 583, 590 (2014)). "If the insurance carrier fails to disclaim coverage in a timely manner, it is precluded from later successfully disclaiming coverage." *NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d Cir. 2010) (citing *Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 1029 (1979)); *see also ROMCO Structural Sys. Corp. v. AXIS Ins. Co.*, No. 1:20-CV-2772 (ST), 2022 WL 970770, at *5 (E.D.N.Y. Mar. 31, 2022) ("An unreasonable delay in disclaiming coverage by an insurer under § 3420(d)(2) estops that insurer from raising the defense of non-coverage at a later time.").

## **DISCUSSION**

Defendant argues that Plaintiffs' complaint must be dismissed for two reasons. First, Item 7 of the Policy unambiguously excludes coverage for the Accident as the pilot listed in Part A was not the pilot in command at the time of the Accident, the circumstances contemplated by Part B were not applicable, and, most importantly, Dundas' lack of a valid FAA-issued medical certificate precludes a finding that he had a "currently effective certificate issued by the Federal Aviation Administration" as purportedly required by Part C. (Def's Mem. at 9; *see also* Policy at 3). Second, that the Complaint fails to state a claim under the New York Insurance Law § 3420(d)(2) because the Accident occurred in Connecticut, and not in New York, as required.

A. <u>Plaintiffs' Claims Under New York Insurance Law § 3420(a)(2) Cannot Be Dismissed</u>

Plaintiffs have satisfied the prerequisites for bringing suit under New York Insurance Law § 3420(a)(2). Plaintiffs obtained the Judgment against the Dundas Estate (Compl. ¶ 28; *see also* Compl. Ex. F – Judgment), served both the Dundas Estate and Global with a copy of the Judgment in May 2021 (Compl. ¶¶ 29–30; *see also* ECF Nos. 1-9–1-12), and filed the instant Complaint

11

more than thirty days after such service in August 2021 (Compl. ¶ 32). With these prerequisites satisfied, Plaintiffs may "step[] into the shoes of the tortfeasor and can assert any right of the tortfeasor-insured against the insurance company.'" *Cont'l Ins. Co.*, 603 F.3d at 179 (quoting *Lang*, 3 N.Y.3d 350). However, those rights "are no greater or less than those of the insured debtor, and recovery cannot exceed the policy limits." *Id.* (quoting *McCormick & Co., Inc. v. Empire Ins. Group,* 878 F.2d 27, 29 (2d Cir. 1989)); *see also Wadsworth v. Allied Pros. Ins. Co.*, 748 F.3d 100, 107–08 (2d Cir. 2014) ("The effect of the statute is to give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied.") (quoting *Lang*, 3 N.Y.3d at 354–55); *Konig v. Hermitage Ins. Co.*, 93 A.D.3d 643, 645 (N.Y. App. Div. 2012) (noting that an injured party may "recover the amount of the unsatisfied judgment, up to the policy limit"). Accordingly, the Court must determine whether Plaintiff, through the Dundas Estate, could recover against Global under the Policy.

Defendant argues that dismissal is warranted as Plaintiffs cannot recover against Global under the Policy. Global contends that Part C unambiguously excludes coverage as Dundas did not hold a valid medical certificate issued by the FAA at the time of the Accident.[5] "[W]hen an insurer moves to dismiss a coverage action on the grounds that a policy exclusion applies, the motion to dismiss must be denied 'unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation.'" *Knox v. Ironshore Indem. Inc.,* No. 21 Civ. 6321 (DLC),

---

[5] (Def's Mem. at 10 ("In short, the term, 'currently effective certificate' issued by the FAA clearly and unambiguously communicates to anyone who has ever held or applied for a pilot certificate issued by the FAA that a current medical certificate is required, as set forth in 14 C.F.R. § 61.3(c). Accordingly, the Policy clearly and unambiguously communicated to its insured that it did not provide coverage for liabilities arising out of a flight in which the pilot in command lacked a current FAA-issued medical certificate.")).

2021 WL 5910112, at *4 (S.D.N.Y. Dec. 10, 2021) (quoting *Dormitory Auth. v. RLI Ins. Co.*, 143 N.Y.S.3d 31, 33 (1st Dep't. 2021)), *aff'd*, No. 21-3032, 2022 WL 2236951 (2d Cir. June 22, 2022). I respectfully recommend that the motion to dismiss Plaintiff's § 3420(a)(2) claims be denied because Global has failed to demonstrate that the allegations of the Complaint cast that pleading solely within the Part C Policy exclusion, and that they are subject to no other interpretation.[6]

The Court begins, as it must, with the language of the Policy itself. *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 457 (S.D.N.Y. 2015) (in interpreting an insurance contract, the court "begins with the plain language of the provision in dispute."), *aff'd*, 650 F. App'x 70 (2d Cir. 2016). "New York insurance law provides that 'an insurance contract is interpreted to give effect to the intent of the parties *as expressed in the clear language of the contract.*'" *Zahler v. Twin City Fire Ins. Co.*, No. 04 Civ. 10299 (LAP), 2007 WL 2936321, at *2 (S.D.N.Y. Sept. 17, 2007) (emphasis added) (quoting *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)). Here, the clear language of the Policy does not support dismissal.

Part C provides that the Policy shall not apply unless the pilot in command held "a currently effective certificate issued by the Federal Aviation Administration designating him or her a private, commercial or airline transport pilot," with certain flight ratings. (Policy at 3).[7] The words and phrases in Part C must be read as a whole, and not in isolation, or apart from the larger Policy. Notably, Part C refers in the singular to a "currently effective certificate", not "certificates", and

---

[6] In its reply, Global intimates that Part C is a condition precedent to coverage, rather than an explicit policy exclusion. (Def's Reply at 6 (the "pilot warranty provisions are part of the declarations denying coverage; cross-referenced in exclusions to emphasize that they limit coverage.") Regardless of whether Part C is a condition precedent or an exclusion, it would have to unambiguously preclude coverage, and it does not.

[7] There is no dispute that Part C is the operative Policy provision at issue. There is also no dispute that Dundas held "a currently effective certificate" issued by the FAA designating him as an airline transport pilot at the time of the Accident, and had the requisite flight ratings required by Part C.

13

specifically refers to a "currently effective certificate . . . *designating [the pilot] a private, commercial or airline transport pilot*." (Policy at 3) (emphasis added). There is nothing within Part C itself that explicitly or implicitly refers to a "medical certificate", or the requirement that the pilot in command have one in order for the Policy to apply. There also is nothing in the record to indicate that an FAA medical certificate designates someone as a pilot of any class. In other words, pilot's certificates and medical certificates are separate and distinct. The Policy as a whole is also completely devoid of the words "medical certificate," let alone the express or implied requirement that the pilot in command have one for the Policy to provide coverage. If it was the parties' intention at the time the Policy was issued to require that the pilot in command hold both a "currently effective" pilot's certificate *and* medical certificate, they easily could have, and should have, explicitly stated so in the Policy. *See, e.g.*, *Bellefonte Underwriters Ins. Co. v. Alfa Aviation, Inc.*, 300 S.E.2d 877, 878 (N.C. Ct. App. 1983) (policy provided coverage for pilots "holding valid and effective *pilot and medical certificates* with ratings as required by the Federal Aviation Administration . . . ." (emphasis added)), *aff'd*, 312 S.E.2d 426 (N.C. 1984); *Ranger Ins. Co. v. Bowie*, 574 S.W.2d 540, 541 (Tex. 1978) (similar); *Ranger Ins. Co. v. Columbus-Muscogee Aviation, Inc.*, 204 S.E.2d 474, 475 (Ga. Ct. App. 1974) (similar); *Omaha Sky Divers Parachute Club, Inc. v. Ranger Ins. Co.*, 204 N.W.2d 162, 163 (Neb. 1973) (similar). The language in Part C is clear and unambiguous, and requires only that the pilot in command hold "a currently effective" pilot's certificate for the Policy to apply.

Global's attempt to read into Part C the unambiguous requirement that the pilot in command also hold a valid medical certificate is rejected. (Def's Mem. 9–10). Even putting aside the plain language of Part C discussed above, Global cannot rely on the FAA regulations, the NTSB Report, or Dundas's insurance application to argue that the Policy unambiguously requires that a pilot have

14

a valid medical certificate. (Def's Mem. at 8–9 (citing 14 C.F.R. § 61.3(c) and the NTSB Report); *id.* at 10 ("[t]he application for insurance that Mr. Dundas submitted to obtain the Policy underscores his understanding that, without a current medical certificate, he did not qualify as a pilot in command under the Policy . . . .")).[8] In assessing ambiguity, courts must look at the terms provided within the four corners of the policy rather than outside sources. *See Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011); *see also In re MPM Silicones, L.L.C.*, 874 F.3d 787, 795 (2d Cir. 2017) ("The initial inquiry is whether the contractual language, without reference to sources outside the text of the contract, is ambiguous."). Indeed, by relying on these outside sources to glean the parties' intent, Global tacitly admits that the Part C is ambiguous. If Part C is ambiguous, Global cannot carry its burden on this motion to dismiss to prove that the allegations of the Complaint cast that pleading solely within the Part C Policy exclusion, and that they are subject to no other interpretation.

Accordingly, I respectfully recommend that Global's motion to dismiss Plaintiff's common law claims brought under New York Insurance Law § 3420(a)(2) be denied.

B.  Plaintiffs' Claims Under New York Insurance Law §3420(d)(2) Must Be Dismissed

Regardless of where the Accident occurred, Plaintiff's claims under New York Insurance Law § 3420(d)(2) must be dismissed.

Plaintiffs note that Global sent its first disclaimer of coverage to the Dundas Estate 105 days after obtaining notice of the occurrence (Compl. ¶ 24; *see also* First Denial), but do not allege that the disclaimer was untimely; rather, they allege that Global violated the statute by sending disclaimers of coverage only to the Dundas Estate, rather than to both the Dundas Estate and to

---

[8] As discussed above, Dundas' insurance application is not properly considered at this stage, as it was not incorporated by reference or relied upon in drafting the Complaint such that it can be considered "integral." Nevertheless, even if considered, the insurance application does not affect the analysis.

15

Plaintiffs, and as a result Defendant cannot disclaim coverage as to Plaintiffs. (Compl. ¶¶ 23–31, 38–41; *see also* First Denial; Second Denial). Defendant argues that it was not obliged to send a disclaimer to Plaintiffs since, under the plain language of the statute, Section 3420(d)(2) applies to "New York accidents" and is thus inapplicable to an airplane crash that occurred in Connecticut. (Def's Mem. at 2, 12; Def's Reply at 9).[9]

Regardless of where the accident occurred, "New York insurance law does not require an insurer to notify an injured party when that injured party has not independently provided notice of an occurrence to the insurer, whatever the ultimate reason for the denial of coverage." *Travelers Indem. Co. of Am. v. S. Gastronom Corp.*, No. 06-CV-5536 (SLT) (RER), 2010 WL 1260202, at *11 (E.D.N.Y. Mar. 3, 2010), *adopted by*, 2010 WL 1292289 (E.D.N.Y. Apr. 1, 2010), *aff'd sub nom. Travelers Indem. Co. of Am. v. Est. of Zeygermakher ex rel. Sidon*, 427 F. App'x 30 (2d Cir. 2011); *see also Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 217–18 (2d Cir. 2004) (holding that an insurer's obligation to disclaim coverage directly to an injured party is triggered upon the injured party's provision of notice of the occurrence). Indeed, "where . . . the insured party gives notice and the injured party only later provides notice, the injured party's notice is 'superfluous' and the insurer need not disclaim as to the injured party." *Webster*, 368 F.3d at 217 n.6 (citing *Mass. Bay Ins. Co. v. Flood,* 513 N.Y.S.2d 182, 183–84 (N.Y. App. Div. 1987)).

Here, Plaintiffs' Complaint outlines claim correspondence indicating that the Dundas Estate timely notified Global of the occurrence twice and that Global disclaimed coverage twice. (Compl. ¶¶ 23–27). To the extent that Plaintiffs argue they should have been included on that

---

[9] Plaintiffs argue that while the crash occurred in Connecticut, the causative misconduct alleged in the underlying wrongful death suit, *i.e.*, the negligent maintenance of the Aircraft, occurred in Dundas' hangar in New York. (Pl's Opp. at 12). Specifically, Plaintiffs argue that the phrase "arising out of" in the statute should be read broadly, and requires only "some causal relationship between the injury and the risk for which coverage is proved.'" (Pl's Opp. at 11 (quoting *Maroney v. New York Cent. Mut. Fire Ins. Co*., 5 N.Y.3d 467, 472–73 (2005)). Defendant counters that Plaintiffs have not cited to a single case in which § 3240(d)(2) was applied to an accident occurring outside New York. (Def's Reply at 7).

16

correspondence, the Second Circuit has specifically held that an insurer's failure to copy an injured party on disclaimer correspondence with an insured does not render a subsequent disclaimer addressed to the injured party late as a matter of law. *See Sidon*, 427 F. App'x at 31. Further, the Complaint indicates that once Plaintiffs notified Global directly of the occurrence by serving a Notice of Entry of Judgment on May 20, 2021, Global responded within just four days to directly inform Plaintiffs that coverage was disclaimed. (Compl. ¶¶ 29, 31). Global's letter to Plaintiffs also indicates that it was under the impression that Plaintiffs had already been informed of the disclaimer by the Dundas Estate. (Third Denial at 1).

Since the Dundas Estate was the first to inform Global of the occurrence, Global was under no obligation to independently inform Plaintiffs of the disclaimer. And, once Global received independent notice of the occurrence, it did inform Plaintiffs of the disclaimer within a reasonable time. Accordingly, Global is not estopped from disclaiming coverage under Section 3420(d)(2). Therefore, I respectfully recommend that Your Honor grant Defendant's motion to dismiss as to Plaintiff's § 3420(d)(2) claim.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Your Honor grant Defendant's motion to dismiss Plaintiff's § 3420(d)(2) claim, but deny Defendant's motion to dismiss Plaintiff's § 3420(a)(2) claims.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Diane Gujarati within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).


**RESPECTFULLY RECOMMENDED.**


/s/ Ramon E. Reyes, Jr.
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: August 5, 2022
Brooklyn, NY